HELENA GOLD AND IRON COMPANY, APPELLANT, *v.* BAGGALEY, RESPONDENT.

(No. 2,297.)

(Submitted October 10, 1906.  Decided November 5, 1906.)

*Mines—Location—Declaratory     Statements—Adverse     Suits—Public Lands.*

Mines—Location—Adverse Suits—Declaratory Statement—Sufficiency.
    1.  The declaratory statements of two lode locations which read, relative to the description of the excavations made at the points of discovery, respectively, that "a shaft the dimensions of which are

—— feet and —— feet in ten feet and six inches depth'' had been sunk, and in the other, that ''a tunnel, the dimensions of which are —— by —— feet, and eleven feet eight inches in length.'' had been run, were defective in that they each contained a statement of but one dimension, whereas the statute (Political Code, section 3612, as amended by Session Laws, 1901, page 140) requires ''the dimensions,'' including length, breadth and depth, to be stated.

Same—Declaratory Statements—Statutory Requirements.

2. The declaratory statement of a lode location should so far comply with the requirements of the statute (Political Code, sections 3611, 3612, as amended by Session Laws, 1901, page 140) as to leave an inference, at least, that the excavation made at the point of discovery cuts the vein at a depth, in case of a shaft, and at a length, in case of a tunnel, of ten feet below the surface.

Same—Adverse Suits—Judgment.

3. *Obiter:* Inasmuch as the federal government is a *quasi* part to adverse suits to mining claims, where it appears that neither party is entitled to patent, judgment should be rendered to that effect.

Same—Location—Interest of Locator.

4. The interest which a locator of a mining claim has in the same, prior to procurement of patent, is only a right to the exclusive possession of the land based upon conditions subsequent, by a failure to fulfill which he forfeits his interest in the claim.

Same—Conflicting Locations—Public Lands.

5. *Held,* that where the locator of a lode mining claim failed to comply with the requirements of the statute relative to completing his location after the posting of his declaratory statement, and another made a location conflicting with the claim of the prior discoverer, the area in conflict did not revert to the public domain, but inured to the benefit of the junior locator who, by performing the necessary work required by statute, became entitled to the possession of it.

*Appeal from District Court, Lewis and Clark County; Henry C. Smith, Judge.*

ACTION by the Helena Gold and Iron Company against Ralph Baggaley. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

*Mr. C. B. Nolan,* for Appellant.

This court has at all times adopted a liberal rule of construction in the consideration of these location notices, and in *Purdum* v. *Laddin,* 23 Mont. 387, 59 Pac. 153, the doctrine was announced that only a substantial compliance with the law was needed. (*Hauswirth* v. *Butcher,* 4 Mont. 299, 1 Pac. 714; *Bramlett* v. *Flick,* 23 Mont. 96, 57 Pac. 869; *Walker* v. *Pennington,* 27 Mont. 369, 71 Pac. 156; *Wilson* v. *Freeman,* 29 Mont. 470, 75 Pac.

84, 68 L. R. A. 633. See also, *Emerson* v. *McWorther,* 133 Cal. 510, 65 Pac. 1036; *McCann* v. *McMillan,* 129 Cal. 350, 62 Pac. 31; *Duncan* v. *Fulton,* 15 Colo. App. 140, 61 Pac. 244; *Farmington Gold Min. Co.* v. *Rhynney Gold etc. Co.,* 20 Utah, 363, 77 Am. St. Rep. 913, 58 Pac. 832; *Smith* v. *Newell,* 86 Fed. 56.)

The effect of the posting of the notice of location of the Wisconsin lode was to secure to the locator the right of possession to a tract of land, whose exterior boundary extended in every direction eleven hundred and fifty feet from the place where the notice was posted. (*Sanders* v. *Noble,* 22 Mont. 115, 55 Pac. 1037, and cases cited; *Erhardt* v. *Boaro,* 113 U. S. 527, 5 Sup. Ct. 560.) On the 6th of December, 1904, the predecessor in interest of the defendant posted a notice of location to the Success claim which covered this ground in controversy with the Wisconsin claim. The ground at the time when this posted notice was placed thereon was not public domain subject to appropriation. The posted notice of the locator of the Wisconsin lode gave him the right to the possession of the ground for thirty days and the attempt to secure the ground through its location as the Success claim was a trespass, and initiated no right to the ground. (*Omar* v. *Soper,* 11 Colo. 380, 7 Am. St. Rep. 246, 18 Pac. 443; *Sullivan* v. *Sharp,* 33 Colo. 346, 80 Pac. 1054; *Sierra Blanco Min. etc. Co.* v. *Winchell* (Colo.), 83 Pac. 628; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. 673; *Porter* v. *Tonapah North Star Development Co.,* 133 Fed. 756; *Peoria etc. Min. Co.* v. *Turner* (Colo. App.), 79 Pac. 915.)

*Mr. Wm. T. Pigott, Mr. C. R. Stranahan,* and *Mr. John J. McHatton,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant on March 13, 1905, filed an application in the land office at Helena for a patent to the Success quartz lode mining claim. Within the sixty days of publication of notice of the application, the plaintiff filed its adverse claim, alleging right to the possession of the ground covered by the Success

claim to the extent of five and eight-hundredths acres under two prior locations, named, respectively, the ''Helena'' and the ''Wisconsin'' quartz lode claims. This action was then brought to determine the right of possession to the area in controversy.

The discovery of the Success lode was made by one William M. Kirkpatrick, the grantor of the defendant on December 6, 1904. The preliminary work was done and his declaratory statement was filed and recorded on January 4, 1905. The discovery of the Helena lode was made on April 9, 1904. The declaratory statement was filed for record on June 8, 1904. Title to the Wisconsin lode is based upon a discovery and location made on November 14, 1904, the record of which was made on January 10, 1905.

At the trial the defendant objected to the introduction in evidence of the declaratory statements of the Helena and Wisconsin lode claims, on the ground that they are void, in that they do not state the dimensions of the excavations made at the points of discovery upon the two claims; the excavation in the one case being a shaft and in the other a tunnel. The objections were overruled, and the statements were admitted. Upon the evidence adduced the court made findings of fact and conclusions of law, and rendered judgment for the defendant. The appeal is from the judgment.

No question is made as to the validity of the Success location, except as to the area in conflict. The contention is that the court erred in its conclusions of law upon the facts found, and in rendering judgment for the defendant. The defendant answers this contention by the argument that the judgment is correct because (1) the complaint does not state facts sufficient to constitute a cause of action; and (2) that it is apparent that the declaratory statements filed for record for both the plaintiff's claims, which are set forth in full in the findings, are ineffective to show any right in the plaintiff, since they do not meet the requirements of the statute. The second contention of the defendant must be sustained, and is conclusive of the case. Since this is so, we shall not pause to consider whether the complaint

is sufficient, but, for present purposes, assume that it is, and proceed to discuss the questions presented by the second contention.

In so far as it is necessary to consider the declaratory statements, the portions of them describing the excavations made at the points of discovery are as follows: For the Helena claim the statement is: "Since and within sixty days from the date of this location, the following work has been performed upon said lead, viz.: At the point of discovery a shaft, the dimensions of which are ——— by ——— feet and ——— feet in ten feet and six inches depth." In this connection the Wisconsin statement reads: "Since and within sixty days from the date of this location, the following work has been performed upon said lead, viz.: At the point of discovery, a tunnel, the dimensions of which are ——— by ——— feet, and eleven feet eight inches in length." Assuming, for present purposes, that the locations of these excavations are sufficiently fixed by other recitals in the statements, these are the only recitals descriptive of the preliminary work done on either claim.

Section 3610 of the Political Code provides that on all claims a notice must be posted at the point of discovery stating: 1. The name of the lode; 2. The name of the locator or locators; 3. The date of the location; 4. If a lode claim, the number of lineal feet claimed along the vein each way from the point of discovery, with the width on each side of the center of the vein, and the general course of the vein, as near as may be.

Section 3611, as amended by the Act of 1901 (Session Laws 1901, p. 140), declares that, before the expiration of sixty days after posting the notice, the locator or locators must sink a discovery shaft upon the claim to the depth of at least ten feet from the lowest part of the rim of the shaft, or deeper, if necessary, to show a well-defined crevice or valuable deposit. A cut, cross-cut, or tunnel which cuts the vein at the depth of ten feet below the surface, or an open cut of at least ten feet in length along the lode from the point where the lead is discovered, is declared to be equivalent to a discovery shaft. Amended section 3612 is

the same as Code section 3612, except that it omits subdivision 7 of the latter, which required the declaratory statement to contain the location and description of each corner with the markings thereon.

Sections 3611 and 3612 were amended to avoid the effect of the decision in *Purdum* v. *Laddin*, 23 Mont. 387, 59 Pac. 153. This case declared a notice insufficient which failed to give the location and description of the corners with the markings thereon. No other change was made in section 3612, and its requirement as to the location and dimensions of the discovery shaft or other excavation at the point of discovery, required as preliminary work, are the same as in the Code section. It declares that the notice must contain: "(6) The dimensions and location of the discovery shaft, cut or tunnel, or its equivalent, sunk upon lode or placer claims." The language of the statute is mandatory in terms. Hence, this court in construing it has departed somewhat from the liberal rule of construction held applicable to such statements prior to the adoption of the Code of 1895, and has uniformly held that the requirements therein must be substantially observed. (*Purdum* v. *Laddin, supra; Hahn* v. *James,* 29 Mont. 1, 73 Pac. 965; *Wilson* v. *Freeman,* 29 Mont. 470, 75 Pac. 84, 68 L. R. A. 833; *Dolan* v. *Passmore, ante,* p. 277, 85 Pac. 1034.)

As stated above, the defect rendering the notice abortive in *Purdum* v. *Laddin* was a failure to give the location and description of the corners with the markings thereon. In *Hahn* v. *James,* there was the same defect, in addition to a failure to give the location and dimensions of the discovery shaft. Again, in *Wilson* v. *Freeman,* there was a failure to give the location of the discovery shaft, and further, since it appeared that the plaintiff's claim was based upon a relocation of an abandoned claim, the notice was also declared abortive because of a failure to comply with the requirements of section 3615, touching the relocation of such claims. In *Walker* v. *Pennington,* 27 Mont. 369, 71 Pac. 156, it was held that a notice was not, as a matter of law, defective which omitted from the description of

the corner posts a statement of their length.  This holding proceeded upon the correct theory that, since subdivision 7 of section 3612 did not require this to be stated, but the location and description only with the markings, and the notice did contain a statement of these, it was *prima facie* good.  In the case of *Dolan* v. *Passmore* a notice which failed to show, even by inference, that the tunnel at the point of discovery cut the vein ten feet below the surface, as is required by section 3611, *supra,* but did show that the contrary was the fact, was held insufficient.

One purpose of these requirements was that the claim might be identified by the notice, so that one going upon the ground with it might find the claim, and know from the evidences found there that the statute has been complied with.  Another purpose was to do away with a practice which had prevailed prior to the enactment of the Code, whereby one person with little labor could make a number of locations in the same locality, and thus withdraw from exploration by other prospectors a large area of the public land.  It was deemed unwise that this practice should prevail, and hence the requirement that substantial work should be done before the notice of location could be filed, and that the notice should show that such work had in fact been done; and though the posts or other markings might disappear, the excavations upon the ground would remain, and they should be of such character as to meet the requirements of the statute and thus effectuate its purpose.  The legislature amended the Code provision so as to remove the necessity of locating and describing the corners with the markings thereon, but it permitted section 3612 to remain otherwise intact; thus evincing a purpose that the locator of a mining claim should not be released from doing the work required under the Code provision in order to make his location valid.

The notices before us contain a statement of but one dimension of the excavations, whereas the statute requires "the dimensions" to be stated, including, of course, length, breadth and depth.  The duty of courts is to find out what the legislature

has said upon the subject in hand, and, if the language is clear
and unambiguous, to follow it, and declare the rights of the
parties accordingly. A statement of the depth of an excava-
tion is no more a statement of "the dimensions" of it than
would be a statement of its breadth. Of course, a shaft must
have dimensions, but a hole driven by a diamond drill also has
dimensions; and, so far as the dimensions given in either one
of the notices in question go, they would apply as well to a drill
hole as to a shaft or tunnel.

While the court might have excluded the notices upon the
objection of counsel, which was seasonably made, under the
cases cited it was clearly correct in its conclusion from the facts
found that the judgment must be for the defendant.

It was suggested during the argument that the case of *Dolan*
v. *Passmore* applies too strict a rule, in that under it the notice
must state that the preliminary work has been done, as required
in section 3611. What is said in that case is that it must ap-
pear from the record that the preliminary work has been done.
This is manifestly the purpose of section 3612, when read in con-
nection with section 3611. The dimensions are not set forth in-
telligibly in the notice which was considered in that case; but,
even if they were, a tunnel of the dimensions given could not
possibly cut the vein at the depth of ten feet below the surface.
The requirement of the statute that the notice must state the
dimensions could have no other purpose than to show a compli-
ance with the law; and while we do not say that the notice
should state definitely that the excavation cuts the vein at the
depth or for the length required by the statute, yet the state-
ment of the dimensions must be such as to leave at least an in-
ference that such is the case, and a notice which fails to thus set
forth the work done certainly does not conform to the spirit of
the statute. If these requirements are too burdensome, an ap-
peal may well be made to the legislature to lighten them; but
the courts have no power to say that this or that substantial re-
quirement may be omitted and the notice still be good. If such
were the rule, the courts could ignore or nullify the will of the

legislature as expressed in its solemn enactments, and substitute instead their own notions of what the law ought to be.

Counsel for appellant contends further that, even if the Helena and Wisconsin locations are void, the judgment must be held erroneous, for the reason that the Success lode was located during the sixty days allowed under the statute for a completion of the Wisconsin location, after the preliminary notice required by section 3610 had been posted. The argument is that, by posting this notice, *pro hae vice,* and for the period of sixty days, an area of the public domain, equal to a circle whose radius is the longest distance claimed along the lode from the point of discovery, is withdrawn absolutely from the public domain, and that a location made on any part of this area during this period is invalid. In support of this contention, he cites, among other cases, *Sanders* v. *Noble,* 22 Mont. 110, 55 Pac. 1037, and *Erhardt* v. *Boaro,* 113 U. S. 527, 5 Sup. Ct. 565, 28 L. Ed. 1116.

Since the federal government is a *quasi* party to suits of this character, and it is incumbent upon the court, in a proper case, to render judgment that neither plaintiff nor defendant is entitled to a patent (*Jackson* v. *Roby,* 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; *Wilson* v. *Freeman, supra*), it becomes necessary to notice this contention; for, although the plaintiff may not present a case upon which he may recover, defendant may not, upon his own showing, be entitled to a patent.

In the case of *Sanders* v. *Noble,* the facts were that the plaintiffs and defendants claimed title to a conflicting area; the former under a location of the Never Sweat lode, and the latter under a location named the Yukon. · The locations were made under the following circumstances: In August, 1897, plaintiffs were prospecting in the vicinity of the conflicting area. On August 7th they made a discovery, and after some preliminary work posted the notice required by section 3610, *supra.* They then left the vicinity to do work elsewhere, and were gone for about thirty days. In their absence, and during the same month, the defendants went upon the ground and located the Yukon, completing their location within thirty days after posting their

notice. The plaintiffs thereafter, and within the ninety days allowed by the statute, did their preliminary work and completed their location. Both made the record required within the ninety days. The two claims being in conflict, the question arose as to who was entitled to the area so in conflict. It was held upon a review of the authorities, following the case of *Erhardt* v. *Boaro, supra,* that the ninety days allowed by the statute after making a discovery and posting the notice were intended to give the discoverer of a lead time to explore it and find out its strike, so that he would know how to lay his claim, and therefore that he could during the ninety days swing the claim in any direction, so as to extend it along the vein to the exclusion of any other location made in the meantime, within a circular area, the diameter of which is equal to the longest distance claimed from the point of discovery. So in the later case of *Bramlett* v. *Flick,* 23 Mont. 95, 57 Pac. 869, the same condition was held to obtain, under section 1477, Fifth Division of the Compiled Statutes of 1887, for the twenty days allowed for the doing of the preliminary work in the completion of the location. But it may not be overlooked that the question before the court in each of the cases was, what the rights of the parties were after both had completed their locations, and both sought to preserve such rights as they had, so far as they might by a compliance with the statute. Read in the light of the facts of this case, they have no application.

The locator of the Wisconsin lode did not comply with the statute, and whatever rights the plaintiff obtained by the preliminary notice posted upon the claim were therefore forfeited and lost. The question here, therefore, is: Did the posting of the notice upon the ground supposed to be covered by the Wisconsin location withdraw it from the public domain, so as to render invalid the location of the Success claim as to the conflicting area, whereas but for this fact it would have been valid? This question, we think, is answered adversely to plaintiff's contention by the case of *Lavagnino* v. *Uhlig,* 198 U. S. 443, 25 Sup. Ct. 716, 49 L. Ed. 1119, decided in 1904. A brief statement of

that case is the following: Uhlig and McKernan, defendants in error, applied for a patent under adjacent locations made on January 1, 1899, named the Uhlig No. 1 and the Uhlig No. 2. Lavagnino filed his adverse claim to a portion of each of the Uhlig claims, which it was asserted overlapped the Yes You Do claim, and entered his action to establish it as the alleged owner of the Yes You Do. The ground covered by the Yes You Do had theretofore been located under the name of the Levi P. claim. But it was asserted that the rights under this claim had been forfeited, and that at the time the Yes You Do claim was located the ground had reverted to the public domain, and hence that the Yes You Do claimant was entitled to the possession of the whole area, notwithstanding the Uhlig locations. The court, in construing section 2326 (U. S. Comp. Stats. 1901, p. 1430) of the United States Revised Statutes, said: "This section plainly recognizes that one who, pursuant to other provisions of the Revised Statutes, has initiated a right to a mining claim, has recorded his location notice, and performed the other acts made necessary to entitle to a patent, and who makes application for the patent, publishing the statutory notice, will be entitled to a patent for the land embraced in the location notice, unless adverse rights are set up in the mode provided in the section; thus clearly providing that if there be a senior locator possessed of paramount rights in the mineral lands for which a patent is sought, he may abandon such rights, and cause them, in effect, to inure to the benefit of the applicant for a patent by failure to adverse, or, after adversing, by failure to prosecute such adverse."

"It cannot be denied that under section 2326, if before abandonment or forfeiture of the Levi P. claim the owners of the Uhlig locations had applied for a patent, and the owners of the Levi P. had not adversed the application, upon an establishment of a *prima facie* right in the owners of the Uhlig claims, an indisputable presumption would have arisen that no conflict claims existed to the premises described in the location notice (*Gwillim* v. *Donnellan*, 115 U. S. 45, 51, 5 Sup. Ct. 1110, 49 L. Ed. 348);

and the same result would have arisen had the owner of the Levi
P. adversed the application for a patent based upon the Uhlig
locations, and failed to prosecute, and waived such adverse
claim.

"In both of the supposed instances the necessary consequence
would have been to conclusively determine in favor of the ap-
plicant, so far as the rights of third persons were concerned,
that the land was not unoccupied public land of the United
States, but, on the contrary, as to such persons, from the time
of the location by the applicant for the patent, was land em-
braced within such location, and not subject to be acquired by
another person; and this result, flowing from the failure of
the owner of a subsisting senior location to adverse an applica-
tion for patent by the owner of an opposing location, or his
waiver if an adverse claim is made, must, as the greater includes
the lesser, also arise from the forfeiture of the claim of the
senior locator before an application for patent is made by the
conflicting locator, and the consequent impossibility of the senior
locator to successfully adverse after the forfeiture is complete."

If this be a correct view of the law as to the effect of the for-
feiture of an older claim which is overlapped by a junior one,—
and we deem it conclusive,—for a much stronger reason must
the failure of the claimant to complete his location after post-
ing his preliminary notice inure to the benefit of a junior lo-
cator whose claim is in conflict with such older claim, when the
inchoate right acquired by the discovery and the posting of the
notice never became fixed by a completion of the location. At
best, "the interest in a mining claim, prior to the payment of
any money for the granting of a patent for the land, is nothing
more than a right to the exclusive possession of the land based
upon conditions subsequent, a failure to fulfill which for-
feits the locator's interest in the claim." (*Black* v. *Elkhorn
Min. Co.,* 163 U. S. 445, 16 Sup. Ct. 1101, 41 L. Ed. 221.) And
under the rule of *Uhlig* v. *Lavagnino, supra,* a forfeiture of the
location, or the abandonment or forfeiture of the right acquired
by the posting of the notice, does not cause the area covered by

it, so far as it is in conflict with a junior right, to revert absolutely to the public domain, but to inure to the benefit of the junior locator.

Recurring again to the cases of *Sanders* v. *Noble* and *Bramlett* v. *Flick, supra,* it may be remarked that, if they are to be understood as declaring the law to be that the posting of the preliminary notice effects, for the time being, an absolute withdrawal of the whole area in the circle from exploration, they are in conflict with the decision in *Uhlig* v. *Lavagnino.* But we do not think the rule stated in them goes so far as to exclude other prospectors from the area absolutely, but only precludes the acquisition of rights within the area which would interfere or conflict with the right of the prior discoverer to swing his claim so as to lay it along the lead after his explorations demonstrate its strike. Such other explorer would certainly go in at his peril. But after the first discoverer has completed his work and located his claim, the junior discoverer, it seems, ought to be secure in any location made by him in the meantime upon other portions of the area not in conflict with the rights of the first discoverer. We do not think there is anything in either of the cases in conflict with this idea. If there is, they must be considered modified, so as to conform to the views now stated.

We are of the opinion, therefore, that the failure of the discoverer of the Wisconsin lode to fulfill the conditions subsequent by a completion of the location after the posting of his notice did not cause the area in conflict between the Wisconsin lode and the success lode to revert to the public domain, but that it inured to the benefit of the Success lode claim, and that by the performance of the conditions subsequent by the discoverer of the Success lode the locator of it became entitled to the possession of it.

Since these views are conclusive of the rights involved we shall not discuss the questions of practice argued by counsel.

The judgment of the district court is affirmed.

*Affirmed.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.