[No. 19531.   Department Two.   March 31, 1926.]

SARAH C. KIRKPATRICK, *as Executrix of the Last Will
and Testament of A. F. Kirkpatrick, Deceased,
Appellant,* v. C. A. CURTISS *et al.,
Respondents.*[1]

[1] MINES AND MINERALS (7) — REQUISITES OF LOCATION — DEVELOP-
MENT AND ASSESSMENT WORK.   Labor was not performed or im-
provements made upon mining claims in compliance with U. S.
Rev. Stat., § 2324, where an engineer merely made three trips
with the purpose of locating a road over which ore might be
hauled to a shipping point, on which he made no survey, but
made field notes and observations from which he determined in
his own mind the best route.

[2] SAME (9) — RELOCATION — POSTING AND RECORDING AMENDED NO-
TICE.   A relocation notice filed within ninety days from the date
of discovery, as required by Rem. Comp. Stat., § 8622, is not
too late nor affected by the fact that an action had been com-
menced by an adverse claimant.

[3] SAME (9).   A relocation notice on abandoned property, stating
that the property is "forfeited and abandoned" property of a
certain owner, sufficiently complies with Rem. Comp. Stat.,
§ 8629, requiring an amended certificate to state if the whole
or any part is "located as abandoned property."

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered January 5, 1925,
upon findings in favor of the defendants, in an action
to quiet title to mining claims, tried to the court.   Af-
firmed.

*Sherwood & Mansfield* and *Herr, Bayley & Croson,*
for appellant.

*Horan & Mulvihill,* for respondents.

MAIN, J.—The parties to this action are rival claim-
ants to the possessory right of certain mining claims
in the May Creek mining district in Snohomish county
in this state.   The plaintiff claims through location

notices posted and filed some years prior to July 1, 1924. The defendants claim under location notices posted on that day and filed on July 7, 1924, and the amended notices filed on September 10, 1924, and that the plaintiff failed to perform labor on the claims as required by law for the year ending July 1, 1924. The trial was to the court without a jury and resulted in findings of fact, conclusions of law and a judgment sustaining the position of the defendants. From this judgment the plaintiff appeals.

[1] The first question is whether labor had been performed or improvements made upon the claims during the year prior to July 1, 1924, as required by § 2324, Rev. Stat. U. S. (2d ed.). During that year, the appellant testator, who will be referred to as though he was the appellant, employed a consulting engineer to go to the district for the purpose of locating a road over which the ore from the claims might be hauled to a shipping point. This engineer, during that year, made three trips and looked over three possible routes. On none of these trips did he make a survey, but made observations and field notes, and, as he testified, had determined in his own mind the best route for the road to remove the ore from the mine. During that year, no physical work was done in preparing the road or upon the mining claims. The question then is whether this can be said to be labor performed upon the claims as required by the above mentioned statute.

Snyder on Mines, p. 471, states the rule to be "that the test in all cases which should be applied to annual labor is whether the work or improvements tend to develop the claim, and facilitate the extraction of the mineral and valuable contents therefrom."

In *Bishop v. Baisley,* 28 Ore. 119, 41 Pac. 936, it was held, that picking rocks from the walls of a shaft or

outcropping of a ledge in small quantities from day to day and testing it could not be held to be part of the $100 worth of work or improvements required to be made within one year from the date of the location. In *Fredricks v., Klauser,* 52 Ore. 110, 96 Pac. 679, it was held that the requirement of the federal statute, as to annual labor or improvements upon mining claims, means such an artificial change of physical condition of the earth in, on, or so reasonably near, a mining claim as to evidence a design to discover mineral therein or to facilitate its extraction. In *Champion Copper Co. v. Peyer,* 228 Pac. (N. M.) 606, it was held that unless expenditures for machinery bear some direct relation to mining operations, they are not available as an annual expenditure required by the federal statute. It was there said:

"It is to be noted that what was done was to buy an old gristmill, located some 6 or 7 miles away from the claim. It was out of repair, and bore no relation whatever to the mine, and never had. Appellant claimed that it intended to reconstruct the plant, manufacture electrical energy, and convey the same to the mine, and there use the same in mining operations, but that it was unable to do so on account of the conditions arising out of the war legislation. The plant was never reconstructed; no electrical current was ever generated; no wires were ever strung; nothing whatever was done. It would seem clear that the purchase of the old plant was not annual expenditure on the mine. We have recently examined this question in *Golden Giant Mining Co. v. Hill,* 27 N. M. 124, 198 Pac. 276, 14 A. L. R. 1450. While the facts were different in that case, the general doctrine there announced is applicable here. Whether such an expenditure under any circumstances would be available as annual assessment we do not decide, but it is clear that some direct relation between such an expenditure and actual mining must be established before such expenditure is available."

In *Du Prat v. James,* 65 Cal. 555, 4 Pac. 562, it was held that the expenditure of money and time in traveling about, regarding matters connected with the mining claim, were in no sense labor performed on the mine. It was there said:

"Plaintiff insists that he performed the work required, and therefore did not forfeit his right to hold the ground. The court found that he performed in the year 1880 three days' labor, of the value of three dollars per day, and no more. The plaintiff claims that the court erred in excluding from its conclusion as to labor performed on the claim his time and expenses spent and incurred as follows: In October, 1879, plaintiff leased a mill located about a quarter of a mile from his claim, and from that time until December 25th made unsuccessful efforts to obtain water to operate the mill. About the latter part of December, 1879, or the first of January, 1880, the company owning a ditch let sufficient water run to the mill for the use of plaintiff, but he did not use or attempt to use the same, nor crush or attempt to crush rock or ore. Plaintiff went from Groveland to Sonora, in said county, twice, from Groveland to San Francisco once, and from Oakland to San Francisco five or six times to see the agent of the water company for the purpose of getting water to operate the mill. His personal expenses incurred, and the value of his time on those occasions, were from one hundred and fifty to four hundred dollars. We think that in no sense can these expenditures and values be said to be labor performed on the mine."

Reference will now be made to a few of the cases cited by the appellant on this question, which appear to be most nearly in point.

In *Capron v. Strout,* 11 Nev. 304, it was held that the work of the foreman of a mine, employed to "boss" the men at work in the mine, keep their time and give them orders for their pay, was of a kind protected by the lien law. That was a case where a laborer's lien was asserted and it was there said:

"According to the findings, he certainly did work in the mine, though not with his hands, and it is clear that the direct tendency of his work was to develop the property. We think the foreman of work in the mine is as fully secured by the law as the miners who work under his direction."

In *Gould v. McCormick*, 75 Wash. 61, 134 Pac. 676, Ann. Cas. 1915A 710, 47 L. R. A. (N. S.) 765, it was held that architects, employed to draw plans and specifications and superintend the construction of a building, had a lien right which could be enforced. In that case, the architects had prepared the plans and specifications, had superintended the construction of the building until it was about one-third completed, when they were discharged. In each of those cases the claim was for labor performed under a lien law, and was in connection with work actually done upon the property.

In *Florence-Rae Copper Co. v. Kimbel*, 85 Wash. 162, 147 Pac. 881, the original locator, prior to the relocation, had resumed operations by building and improving trails and roads for the development of the mine, and was furnishing and moving donkey engines and other material for the purpose of facilitating mining operations, and it was held that this satisfied the requirement as to annual labor or improvements on the mine. The difference between that case and this is, that there, work and labor was performed which bore a reasonably direct relation to the development of the mine. Here no labor was performed, either in constructing a road or upon the property. The only evidence, as to the particular road which would be prepared for the hauling of the ore, was the statement of the engineer that he had mentally concluded that one of the three prospected was the one to be improved. No case that we have examined has gone so far as to hold that this would constitute annual labor upon a

mining claim which would satisfy the requirements of
the statute. Upon this branch of the case, it must be
held that the annual labor required for the year prior
to the relocation had not been made.

[2]   The next question is whether the relocation no-
tices were sufficient.

Section 8623, Rem. Comp. Stat., states the require-
ments for an original location notice, among which is
the posting at discovery a notice, specifying what it
shall contain. Section 8622 provides that, within ninety
days from the date of discovery, a notice containing
the matters there required shall be recorded in the
office of the auditor of the county in which the claim is
found. Section 8626 provides for the filing of an
amended certificate of location. Section 8629 provides,
among other things, that a relocation shall be made in
the same manner and to the same extent as is required
in making a new location.

The question here is, whether the amended notice
filed on September 10, 1924, and within ninety days
after the relocation notice was posted, is sufficient to
hold the property. It is argued that, since the present
action had been begun prior to the time the amended
notice was filed, that it came too late. It was, as stated,
filed within the ninety days, and it does not seem that
the beginning of the action could deprive the relocator
of a right to file an amended notice within that time.
In the cases of *Johns v. Phoenix Nat. Bank,* 6 Ariz.
290, 56 Pac. 725, and *Strepy v. Stark,* 7 Colo. 614, 5
Pac. 111, under statutes similar to those in this state,
it was held that the right to file for record the copy of
the notice within the ninety days provided by statute
was not affected by the fact that prior to the filing an
action had been begun by the rival claimant. In the
*Strepy* case it was said:

"From the foregoing view of the purpose and functions of a location certificate, original and additional, it does not appear that the admissibility in evidence of such additional certificate is affected by the circumstance that it was filed subsequent to the commencement of the suit, since it is not evidence of any after-acquired right or interest, but merely evidence relating to a right of possession which must have been acquired prior to the filing of such certificate, and prior to the acquisition of any intervening right of the controverting party."

[3]   It is further claimed that the amended certificates do not satisfy § 8629, Rem. Comp. Stat., which requires that said certificates shall state if the whole or any part of the property is "located as abandoned property." The amended certificates recite, "This property is forfeited and abandoned property, former owner A. F. Kirkpatrick." It seems to us that this meets the requirement of the statute.

The case of *Knutson v. Fredlund,* 56 Wash. 634, 106 Pac. 200, is not controlling. In that case the relocation notices did not cure the defects of the original notices.

It follows that, since the annual labor required had not been performed prior to July 1, 1924, and since the attempted relocations met the requirements of the law, it must be held that the relocators have the superior right.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, MACKINTOSH, and PARKER, JJ., concur.